UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

PRISGAR DE SUZE, an individual,

      Plaintiff,

vs.

MARRINSON GROUP, INC.,
a Florida Corporation, d/b/a MANOR PINES,

      Defendant.

_____/

## COMPLAINT

1.    Plaintiff, PRISGAR DE SUZE (hereinafter referred to as "Plaintiff" and "DE SUZE"), was an employee of Defendant, MARRINSON GROUP, INC., a Florida Corporation d/b/a MANOR PINES, and brings this action against Defendant for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553 (the "ADAAA").

2.    DE SUZE is an individual residing in Broward County, Florida, within the jurisdiction of this Court.

3.    Defendant, MARRINSON GROUP, INC. (hereinafter referred to as "MARRINSON GROUP" and "Defendant"), has at all times material to this Complaint owned and operated a skilled nursing facility and rehabilitation center doing business as MANOR PINES located at 1701 N.E. 26th Street, Fort Lauderdale, Florida 33305 in Broward County, Florida, within the jurisdiction of this Court.

1

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §1332, §1337, and 29 U.S.C. §12101.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all of the events, or a substantial part of the events, giving rise to this action, occurred in Broward County, Florida, within the jurisdiction of the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

6.      At all times material to this action, DE SUZE was an "employee" of MARRINSON GROUP within the meaning of the ADAAA, 42 U.S.C. §12111(4),

7.      At all times material to this action, MARRINSON GROUP was an "employer" of DE SUZE within the meaning of the ADAAA, 42 U.S.C. §12111(5), and the FCRA, F.S. §760.02(7), because Defendant was a business engaged in interstate commerce and had Fifteen (15) or more employees in each of Twenty (20) or more calendar weeks in the current or preceding year.

8.      In approximately 2011 or 2012, MARRINSON GROUP hired DE SUZE as a Porter-Custodian at the MANOR PINES skilled nursing facility and rehabilitation center located at 1701 N.E. 26th Street, Fort Lauderdale, Florida 33305.

9.      At all times material to this action, DE SUZE was an individual with one or more chronic medical conditions, including but not necessarily limited to multiple myeloma, a cancer of the blood cells,[1] which affects, *inter alia*, Plaintiff's hemic, immune, and musculoskeletal systems, and which caused medically related absences throughout the course of DE SUZE's employment with MARRINSON GROUP between approximately January 2019 and May 2019.

---

[1] DE SUZE was first diagnosed with multiple myeloma in approximately 2009 when he was Fifty-Nine (59) years of age and successfully worked for more than the next ten (10) years despite Plaintiff's cancer.

10.     At all times material to this action, including but not necessarily limited to between approximately January 2019 and May 2019, DE SUZE's primary duties for MARRINSON GROUP at the MANOR PINES skilled nursing facility and rehabilitation center consisted of custodial work, namely:  (a) emptying trash bins and taking out the trash; and (b) cleaning the floors of the facility.

11.     Significantly, the performance of DE SUZE's essential duties between approximately January 2019 and May 2019 as a Porter-Custodian for MARRINSON GROUP at MANOR PINES *did not* require Plaintiff to regularly lift more than ten (10) pounds, as DE SUZE instead regularly took out trash bags and worked with trash bins that were not heavy items and even the floor buffer that was used sometimes once or twice per week was equipment that Plaintiff was fully capable of pushing in the facility.

12.     In or around approximately December 2018-January 2019, DE SUZE began experiencing physical symptoms because of Plaintiff's multiple myeloma, including by way of example, back problems, in connection with which DE SUZE sought medical leave under the Family and Medical Leave Act (FMLA).

13.     On or around January 30, 2019, MARRINSON GROUP notified DE SUZE in writing that he was eligible for medical leave from his employment under the FMLA.

14.     On or around February 18, 2019, the "Certification of Healthcare Provider Form" provided to DE SUZE by MARRINSON GROUP in connection with Plaintiff's FMLA leave was completed by Dr. Sondra Aiken, board certified Internal Medicine, see Exhibit A, in which Certification Dr. Aiken documented that, *inter alia*:  (a) DE SUZE was experiencing possible bone deterioration from steroidal treatment for Plaintiff's multiple myeloma leading to vertebrae fractures and back pain for which Plaintiff would be receiving an orthopedic evaluation and pain

management; (b) the only job function DE SUZE was then unable to perform was "lifting"; and (c) FMLA leave through a reduced work schedule of four (4) hours per day four (4) days per week between approximately January 2019 and March 2019.

15.    In March 2019, DE SUZE was absent from his employment with MARRINSON GROUP on FMLA leave for approximately four (4) weeks while Plaintiff received in-patient treatment at Baptist Hospital as a result of Plaintiff's multiple myeloma and associated back problems and medical condition.

16.    In early April 2019, DE SUZE began undergoing a course of chemotherapy for Plaintiff's multiple myeloma.

17.    On or around April 4, 2019, MARRINSON GROUP notified DE SUZE that his twelve (12) weeks of eligible medical leave under the FMLA would purportedly be expiring on April 19, 2019 and Plaintiff needed to: (a) contact Defendant immediately about returning to work; (b) request an extended medical leave due to any inability to return to work because of his medical condition; or (c) resign due to his inability to return to work.

18.    On or around April 17, 2019, DE SUZE requested an accommodation from MARRINSON GROUP for his multiple myeloma and related medical conditions in the form of a brief extension of time off and/or accommodating Plaintiff's work schedule, and on April 17 or 18, 2019, another "Certification of Healthcare Provider Form" for DE SUZE was sent to MARRINSON GROUP from Plaintiff's treating hematology-oncology provider at Baptist Hospital-Miami Cancer Institute, see Exhibit B, in which Certification Defendant was notified, inter alia, DE SUZE: (a) had previously been hospitalized from March 1-29, 2019; (b) was then capable of performing light duty work but should not "lift/pull" anything greater than ten (10)

pounds; and (c) was undergoing chemotherapy treatments that could cause severe fatigue and cytotoxic side effects which include immunosuppression.

19.     On or around May 10, 2019, DE SUZE provided MARRINSON GROUP with a Return to Work letter dated May 10, 2019 from Dr. Claudia Paba Prada at Baptist Hospital-Miami Cancer Institute in which Defendant was notified, *inter alia*, that DE SUZE could return to work on May 13, 2019.  See Exhibit C.

20.     More specifically, on or around May 10, 2019, DE SUZE went, in uniform, to the MANOR PINES facility and Plaintiff showed his supervisor, Steven Jones, MARRINSON GROUP's Housekeeping Director at MANOR PINES, the May 10th Return to Work letter from Baptist Hospital-Miami Cancer Institute (Exhibit C), but Jones first directed DE SUZE to bring the Return to Work Letter to Bill Savage, Defendant's Director at MANOR PINES, who made a copy of the Letter, and Jones subsequently refused to allow Plaintiff to work and instead told Plaintiff to call him in approximately one week.

21.     However, when DE SUZE called Jones approximately one week later by May 17, 2019, Jones informed Plaintiff that MARRINSON GROUP had no place to put Plaintiff to work and DE SUZE's employment with Defendant was terminated.

22.     At all times material to this action, DE SUZE satisfactorily performed his essential job duties as a Porter-Custodian for MARRINSON GROUP.

23.     At all times material to this action, DE SUZE suffered from one or more "physical impairments" within the meaning of the ADA, 29 C.F.R. §1630.2(h)(1), as a result of DE SUZE's multiple myeloma, back condition, and resulting medical issues which were ongoing between approximately January 2019 and May 2019, including but not limited to Plaintiff suffering from a

physiological disorder or condition affecting one or more of DE SUZE's body systems including but not necessarily limited to DE SUZE's hemic, immune, and musculoskeletal systems.

24.     MARRINSON GROUP failed to provide DE SUZE with a reasonable accommodation for Plaintiff's disability and medical conditions and Defendant instead subjected DE SUZE to discrimination, disparate treatment, and retaliation because of DE SUZE's conditions by Defendant, *inter alia*: (a) denying DE SUZE's request for a reasonable accommodation for Plaintiff's disability; and (b) terminating DE SUZE's employment in May 2019 based upon false and/or pretextual grounds because of Plaintiff's disability and/or in retaliation for Plaintiff having sought an accommodation and/or otherwise exercised his rights under the ADA, all in violation of the ADA.

25.     The reasons proffered by MARRINSON GROUP in May 2019 for terminating DE SUZE's employment were false and known to be false by Defendant at the time of Plaintiff's termination and instead were a pretext for disability discrimination and retaliation against DE SUZE in violation of the ADA.

## EXHAUSTION OF ADMINISTRATVIE REMEDIES

26.     On January 29, 2020, DE SUZE filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) and Florida Commission for Human Relations (FCHR) Charge No. 510-2020-02259 alleging that he had been subjected to disability discrimination and retaliation in violation of the Americans with Disabilities Act and the Florida Civil Rights Act.  A copy of DE SUZE's Charge of Discrimination is attached hereto as Exhibit D.

27.     On or around May 8, 2020, the EEOC issued a Dismissal and Notice of Suit Rights to DE SUZE in connection with Charge No. 510-2020-02259.  See Exhibit E.

28.    DE SUZE's Complaint in this action is being filed with the Court on June 23, 2020 within Fort-Five (45) days of DE SUZE's receipt in May 2020 of the EEOC's Dismissal and Notice of Suit Rights for Charge No. 510-2020-02259.

**COUNT I**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

Plaintiff, PRISGAR DE SUZE, reasserts and reaffirms the allegations of Paragraphs 1 through 28 as if fully set forth herein and further states that this is an action against MARRINSON GROUP, INC. for disparate treatment and disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553. ("ADAAA").

29.    The Americans with Disabilities, the ADA and ADAAA, 42 U.S.C. §12112(a), prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

30.    At all times material to this action, DE SUZE suffered from multiple myeloma and other medical conditions which affected Plaintiff's hemic, immune, and musculoskeletal systems and which manifested physical problems during DE SUZE's employment with MARRINSON GROUP between approximately January 2019 and May 2019.

31.    At all times material to this action, DE SUZE suffered from one or more  "physical impairments" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(h)(1), as a result of multiple myeloma or other physiological disorders or conditions which affected DE SUZE's hemic, immune, and musculoskeletal systems.

32.    At all times material to this action, DE SUZE was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i),

including but not necessarily limited to lifting, as well as the operation of one or more of Plaintiff's major bodily functions including but not necessarily limited to functions of DE SUZE's hemic, immune, and musculoskeletal systems.

33.     At all times material to this action, DE SUZE was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. § 12102(1), because Plaintiff (a) suffered physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by MARRINSON GROUP as a person with such impairments.

34.     At all times material to this action, DE SUZE had to endure substantial limitations as a result of multiple myeloma and Plaintiff's related medical conditions within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(j), because DE SUZE's conditions substantially limited Plaintiff's ability to perform one or more major life activities—including but not necessarily limited to lifting—as compared to most people in the general population.

35.     At all times material to this action, DE SUZE has been "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(A), because DE SUZE's chronic multiple myeloma and related medical conditions are actual physical impairments that substantially limit one or more of DE SUZE's major life activities.

36.     In addition, at all times material to this action, DE SUZE has also been "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(C), because DE SUZE was regarded by MARRINSON GROUP as having a physical impairment that substantially limited one or more of his major life activities as a result of DE SUZE's multiple myeloma and related medical conditions.

37.     At all times material to this action, DE SUZE was a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of his job as a Porter-Custodian for MARRINSON GROUP between approximately January 2019 and May 2019 with or without reasonable accommodation by Defendant.

38.     At all times material to this action, DE SUZE was a "qualified individual with a disability" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(m) and 42 U.S.C. §12111(8), because DE SUZE possessed the requisite skill and experience to carry out his duties for MARRINSON GROUP between approximately January 2019 and May 2019, and DE SUZE likewise was capable of performing the essential functions of his job despite DE SUZE's disability, with or without reasonable accommodation(s) by MARRINSON GROUP.

39.     Further, DE SUZE was also qualified for his job with MARRINSON GROUP between approximately January 2019 and May 2019 within the meaning of the ADA and ADAAA, 42 U.S.C. §12111(8) & (9), even in the face of the impact of DE SUZE's multiple myeloma and chronic medical conditions because MARRINSON GROUP could have and should have provided DE SUZE with reasonable accommodation(s) including but not limited to time off, modified work schedule(s), and/or breaks from work because of Plaintiff's medical conditions.

40.     On multiple occasions between approximately January 2019 and May 2019, MARRINSON GROUP subjected DE SUZE to disparate treatment and discrimination in violation of 42 U.S.C. §12112 which was motivated by DE SUZE's disability and Defendant discriminated against DE SUZE because of his disability in violation of 42 U.S.C. §12112, including but by MARRINSON GROUP, *inter alia*: (a) denying DE SUZE's request for a reasonable accommodation for Plaintiff's disability; and (b) terminating DE SUZE's employment in May

2019 based upon false and/or pretextual grounds because of Plaintiff's actual or perceived disability.

41.     MARRINSON GROUP terminated DE SUZE's employment in May 2019 because of DE SUZE's actual and/or perceived disability, in violation of 42 U.S.C. §12112(a).

42.     The reasons proffered by MARRINSON GROUP in May 2019 for terminating DE SUZE's employment were false and a pretext for discrimination against DE SUZE because of his disability in violation of 42 U.S.C. §12112(a).

43.     MARRINSON GROUP knowingly and willfully engaged in conduct prohibited by the ADA and ADAAA against DE SUZE because of his disability so as to discourage, dissuade and/or otherwise dishearten DE SUZE.

44.     DE SUZE's actual and/or perceived disability was a motivating factor in MARRINSON GROUP's decision to terminate DE SUZE's employment in May 2019, in violation of 42 U.S.C. §12112.

45.     MARRINSON GROUP's violations of the ADA and ADAAA were intentional and were done with malice or reckless indifference to DE SUZE's rights guaranteed under the laws of the United States.

46.     DE SUZE has suffered and continues to suffer loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of MARRINSON GROUP's violations of the ADA and ADAAA.

47.     DE SUZE has retained the undersigned counsel to represent him in this action and pursuant to 42 U.S.C. §12205, DE SUZE is entitled to recover all reasonable attorneys' fees and costs from MARRINSON GROUP.

WHEREFORE, Plaintiff, PRISGAR DE SUZE demands judgment against Defendant, MARRINSON GROUP, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

**COUNT II**
**RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

Plaintiff, PRISGAR DE SUZE, reasserts and reaffirms the allegations of Paragraphs 1 through 28 as if fully set forth herein and further states that this is an action against MARRINSON GROUP, INC. for Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §12203, as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553.

48.     The Americans with Disabilities, ADA and ADAAA, 42 U.S.C. §12203(a), provides that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter."

49.     Similarly, the ADA and ADAAA also provide, 42 U.S.C. §12203(b), that it shall "be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or an account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

50.     At all times material to this action, DE SUZE was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. § 12102(1), because Plaintiff (a) suffered physical

impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by MARRINSON GROUP as a person with such impairments.

51.     DE SUZE was at all times material to this action a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of his job as a Porter-Custodian for MARRINSON GROUP between approximately January 2019 and May 2019 with or without reasonable accommodation.

52.     DE SUZE engaged in statutorily protected activity under the ADA and ADAAA on multiple occasions between approximately January 2019 and May 2019 by, *inter alia*, DE SUZE exercising or attempting to exercise or enjoy his rights under the ADA, including but not limited to: (a) requesting an accommodation for his disability; (b) submitting the April 2019 "Certification of Healthcare Provider Form" in connection with his disability; and (c) communicating to both Steven Jones and Bill Savage about DE SUZE's repeated attempts to resume working in May 2019 at MANOR PINES.

53.     MARRINSON GROUP subjected DE SUZE to adverse employment actions including but not necessarily limited to terminating DE SUZE's employment in May 2019 based upon false and/or pretextual grounds because of Plaintiff's good faith objection to discrimination because of an actual or perceived disability, all because DE SUZE engaged in statutorily protected activity under the ADA and ADAAA.

54.     MARRINSON GROUP's retaliatory actions against DE SUZE constitute violations of the ADA and ADAAA, which prohibits employers from discriminating against an individual because he has opposed any act or practice made unlawful under the ADA/ADAAA,

42 U.S.C. §12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADA/ADAAA on account of him having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. §12203(b).

55.     MARRINSON GROUP's termination of DE SUZE's employment in May 2019 was unlawful retaliation in violation of 42 U.S.C. §12203 because of Plaintiff's request for accommodations and Plaintiff's good faith objections to and complaints about MARRINSON GROUP's disparate treatment and disability discrimination, in violation of the ADA.

56.     The fact that DE SUZE engaged in activity protected by the ADA was a motivating factor in MARRINSON GROUP's termination of Plaintiff's employment in May 2019, in violation of 42 U.S.C. §12203.

57.     The reasons proffered by MARRINSON GROUP in May 2019 for terminating DE SUZE's employment were a pretext for unlawful retaliation against DE SUZE in violation of 42 U.S.C. §12203.

58.     As a direct and proximate result of MARRINSON GROUP's unlawful retaliation against DE SUZE in violation of the ADA, Plaintiff has suffered damages and has been deprived of job-related economic benefits, all in amounts to be established at trial.

59.     MARRINSON GROUP's actions have caused DE SUZE to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

60.     MARRINSON GROUP's actions were undertaken intentionally, willfully, and maliciously with respect to, or with malice and/or reckless disregard for, DE SUZE's federally protected rights under the ADA, as a result of which Plaintiff is entitled to punitive damages from Defendant.

61.     Pursuant to 42 U.S.C. §12205, DE SUZE is entitled to recover all reasonable attorneys' fees and costs from Defendant's as a result of MARRINSON GROUP's violations of the ADA's anti-retaliation provisions.

WHEREFORE, Plaintiff, PRISGAR DE SUZE, demands judgment against Defendant, MARRINSON GROUP, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

PRISGAR DE SUZE demands trial by jury on all issues so triable.

Dated:  June 23, 2020                          Respectfully submitted,

                                    By:    **s/KEITH M. STERN**
                                          Keith M. Stern, Esquire
                                          Florida Bar No. 321000
                                          E-mail:  employlaw@keithstern.com
                                          LAW OFFICE OF KEITH M. STERN, P.A.
                                          80 S.W. 8th Street, Suite 2000
                                          Miami, Florida 33132
                                          Telephone:  (305) 901-1379
                                          Facsimile:  (561) 288-9031
                                          Attorneys for Plaintiff

# EXHIBIT A

# F A X S H E E T

| | |
|---|---|
| Date: | Oct-25-2019 10:58:04 |
| To: | Att: Kit Smith |
| Subject: | Patient Document |
| Fax Number: | 561-288-9031 |
| To Company: | |
| From Name: | RIOS,ANA |
| From Company: | Senior Medical Associates Sunrise |
| From Facility: | Senior Medical Associates Sunrise |
| Support Contact: | 954-870-5671 |
| Number of Pages(s): | 5 |

**This facsimile transmission contains confidential information intended for the parties identified above. If you have received this transmission in error, please immediately notify me by telephone and return the original message to me at the address listed above. Distribution, reproduction or any other use of this transmission by any party other than the intended recipient is strictly prohibited.**

**Certification of Health Care Provider for
Employee's Serious Health Condition
(Family and Medical Leave Act)**

**U.S. Department of Labor**

Wage and Hour Division



DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT

OMB Control Number: 1235-0003
Expires: 5/31/2018

**SECTION I: For Completion by the EMPLOYER**
**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: MANOR PINES

Employee's job title: FLOOR TECH            Regular work schedule: 40 HOURS PER WEEK

Employee's essential job functions: HOUSEKEEPING AT SKILLED NURSING FACILITY

Check if job description is attached: _____

**SECTION II: For Completion by the EMPLOYEE**
**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: PRISGAR DESUZE

First                          Middle                          Last

**SECTION III: For Completion by the HEALTH CARE PROVIDER**
**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: Sandra Aiken

Type of practice / Medical specialty: Internal Medicine

Telephone: (954) 726-2262        Fax: (954) 726-7048

Page 1

Form WH-380-E  Revised May 2015

**PART A: MEDICAL FACTS**

1. Approximate date condition commenced: 12/14/2018

   Probable duration of condition: ~ 4 months

   **Mark below as applicable:**
   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
   ✓ No ___Yes. If so, dates of admission:

   Date(s) you treated the patient for condition:
   12/14/18, 12/17/8, 1/28/19 1/31/19, 2/11/19

   Will the patient need to have treatment visits at least twice per year due to the condition? ___No ✓ Yes.

   Was medication, other than over-the-counter medication, prescribed? ___No ✓ Yes.

   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
   ___No ✓ Yes. If so, state the nature of such treatments and expected duration of treatment:
   Orthopedic Surgeon

2. Is the medical condition pregnancy? ✓ No ___Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to the condition: ____ No ✓ Yes.

   If so, identify the job functions the employee is unable to perform:
   Job Functions that Requires lifting

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):
   Multiple Myeloma with possible bony
   deterioration from steroid treatment —
   leading to vertebrae fractures — with
   significant back pain symptom —
   require ortho eval & pain management

CONTINUED ON NEXT PAGE   Form WH-380-E Revised May 2015

**PART B: AMOUNT OF LEAVE NEEDED**

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ___ No _✓_ Yes.

   If so, estimate the beginning and ending dates for the period of incapacity: ~ 3-4 months

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ___ No _✓_ Yes.

   If so, are the treatments or the reduced number of hours of work medically necessary?
   ___ No _✓_ Yes.

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

   _Monthly flu_

   Estimate the part-time or reduced work schedule the employee needs, if any:

   _4_ hour(s) per day; _4_ days per week from _Jan_ through _March_

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ___ No _✓_ Yes.

   Is it medically necessary for the employee to be absent from work during the flare-ups?
   ___ No _✓_ Yes. If so, explain:

   _____

   _____

   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

   Frequency          : _1_ times per _✓_ week(s) ___ month(s)

   Duration: _4th_ hours or ___ day(s) per episode

**ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER:**

_____

_____

_____

_____

_____

_____

Page 3 | CONTINUED ON NEXT PAGE | Form WH-380-E Revised May 2015

_____

**Signature of Health Care Provider**　　　　　　　**Date** 2/18/19

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**

If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210. **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

Form WH-380-E  Revised  May 2015

# EXHIBIT B

Apr. 17. 2019  11:50AM                                    No. 3975   P. 1



# FAX

| For: | **TIFFANY** |
|---|---|
| Fax number: | (786)814-4353 |
| From: | Katie Osborn |
| Fax number: | (954)390-7441 |
| Date: | 04/17/2019 |
| FMLA | **PRISGAR DESUZE** |
| Number of pages: | 9 |
| Comments: | |

Katie Osborn
HR Generalist

Marrinson Group
1601 NE 26th Street
Ft. Lauderdale, FL 33305
Phone: (954)566-8353 ext. 50805
Fax: (954)390-7441

**MARRINSON**
*Senior Care Residences*

Certification of Health Care Provider for
Employee's Serious Health Condition
(Family and Medical Leave Act)

U.S. Department of Labor
Wage and Hour Division



DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT

OMB Control Number: 1235-0003
Expires: 5/31/2018

## SECTION I: For Completion by the EMPLOYER

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: MANOR PINES

Employee's job title: FLOOR TECH                    Regular work schedule: 40 HOURS PER WEEK

Employee's essential job functions: HOUSEKEEPING AT SKILLED NURSING FACILITY

Check if job description is attached:   ✓

## SECTION II: For Completion by the EMPLOYEE

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: PRISGAR DESUZE

First                           Middle                           Last

## SECTION III: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: Yelitza Silva Arani 8900 N. Kendall Dr. Miami, FL 33176

Type of practice / Medical specialty: Hematology oncology

Telephone: (786) 596-2000          Fax: (786) 814-4353

Form WH-380-E Revised May 2015

PART A: MEDICAL FACTS

1. Approximate date condition commenced: _September 2009_

Probable duration of condition: _indefinite_

Mark below as applicable:
Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
___ No   ☒ Yes. If so, dates of admission:
_3/1/19 — 3/29/19_

Date(s) you treated the patient for condition:
_4/4/19 — present_

Will the patient need to have treatment visits at least twice per year due to the condition? ___ No   ☒ Yes.

Was medication, other than over-the-counter medication, prescribed? ___ No   ☒ Yes.

Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
☒ No ____ Yes. If so, state the nature of such treatments and expected duration of treatment:

_____

2. Is the medical condition pregnancy? ☒ No ___ Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

Is the employee unable to perform any of his/her job functions due to the condition: ☒ No ___ Yes.

If so, identify the job functions the employee is unable to perform:

_Light neek should not Lift/Pull anything greater than 10 lbs_

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

_Mr. Desure is undergoing Chemo treatments that can cause severe fatigue and Cytotoxic side effects wich include ImmunoSupression._

_____

_____

CONTINUED ON NEXT PAGE                    Form WH-380-E Revised May 2015

PART B: AMOUNT OF LEAVE NEEDED

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ___No  ☒ Yes.

   If so, estimate the beginning and ending dates for the period of incapacity: mcnthy tx

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ___ No  ☒ Yes.

   If so, are the treatments or the reduced number of hours of work medically necessary?
   ___ No  ☒ Yes.

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

   Chemo on Days 1,4,8, 11, and 15  All day.

   Estimate the part-time or reduced work schedule the employee needs, if any:

   __4__ hour(s) per day; _____ days per week from men through Fr.

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ___No  ☒ Yes.

   Is it medically necessary for the employee to be absent from work during the flare-ups?
   ___ No  ☒ Yes. If so, explain:

   Patient will be undergoing Chemo that may cause Cytotoxic side effects.

   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

   Frequency          : _____ times per _____ week(s) 5 month(s)

   Duration: _____ hours or ___ day(s) per episode

ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER:

_____

_____

_____

_____

_____

_____



_____    __4 | 18 | 19__
Signature of Health Care Provider         Date

PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT
If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29
C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB
control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this
collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining
the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden
estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the
Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC
20210. DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT,

Form WH-380-E  Revised May 2015

Marrinson Group

# Job Description

Issue Date 1/94 (rev. 2/94)

## Job Title:    Custodian/Porter

## Job Summary:

Essential functions of the position:
Maintains the appearance of the facility through upkeep of floors, furniture and equipment.

Job-related physical requirements:
- This is a physical position requiring the ability to stand; walk; freedom of body movement including bending, crouching, turning and reaching; ability to push and pull equipment and furniture.  These abilities will be repeated constantly throughout shift.

- Able to lift and carry up to 30 lbs.

- Reasonable accommodation in accordance with the Americans with Disabilities Act of 1990 (ADA) will be considered for any individual deemed disabled by the Act.

## Supervision:

Reports to:
Director of Housekeeping

Extent of supervision:
Follows daily assignment from supervisor.  Seeks direction for any deviation from assignment.  Seeks direction from Administrator or Charge Nurse in absence of supervisor.

Supervisory Responsibility:
This position has no supervisory responsibility

## Position Specifications:

Education Requirement:
No minimum education specification

Licensure Requirement:
Valid Drivers License with clear record.

Additional skills/knowledge:

- Skill in the use of rotary and high speed floor cleaning machines.

- Skill in the proper care of floors to maximize appearance yet maintain safety.

- Must be able to follow oral and written instructions in the predominant language of the facility.

- Must have knowledge of Residents' Rights and respect these rights at all times.

- Must have appropriate knowledge of Policies and Procedures of the company (including Personnel Policies) and follow these policies at all times.

- Must have knowledge of and practice appropriate safety and injury-prevention measures. Reports any incident/accident immediately, regardless of severity.

- Must have knowledge of and practice applicable infection control techniques.

- Must attend relevant in-service education programs and other informational meetings.

**Status/Schedule:**
Full time, part time, temporary.

**Usual Location:**
Throughout the facility and its immediate grounds. Travel to other facilities of the company as necessary.

## Responsibilities and Duties:

Required duties and tasks

- Maintains floors to optimal appearance within safety guidelines.

- Keeps equipment in good operating order at all times. Brings equipment problems to the attention of supervisor.

- Keeps housekeeping storage and work areas; and equipment clean.

- Uses supplies properly and efficiently.

- Assists in moving furniture and lifting objects when necessary.

- Picks up and disposes of trash as assigned and as needed.

- Removes and disposes of infectious waste containers, according to facility guidelines, as scheduled and as necessary.

- Cleans drain vents in laundry.

- Cleans common areas including but not limited to walls, windows, light fixtures,

and other fixtures).

- Washes windows outside as scheduled.

- Assures that work/assignment areas are clean and equipment, supplies, etc. are properly stored before leaving for breaks and at end of shift.

- Cleans equipment as assigned.

- Cleans the grounds of the facility as directed.

- Transports laundry and other items as requested

- Reports to work on-time.

- Can be relied upon to attend work as scheduled.

\* Accepts as a condition of employment, responsibility to be at the facility or emergency shelter in the event of a natural or other emergency (especially hurricanes). By signing below, employee acknowledges receiving a copy of his/her Emergency Preparedness job description (copy attached)

**Required interaction with employees/other departments/outside parties:**
- Works cooperatively as a team member of the staff.

- Treats residents and visitors to the facility with courtesy and respect, makes serving these people a priority.

The undersigned acknowledges receipt of a copy of this Job Description:

Date: _____

_____

# EXHIBIT C

Patient Letter                                              Desuze, Prisgar - 10067333

## Document Contains Addenda



**Miami Cancer Institute**

**BAPTIST HEALTH SOUTH FLORIDA**

May 10, 2019

Desuze, Prisgar

███████████

Miami, FL 33177

To Whom It May Concern:

This patient was seen at Miami Cancer Institute. He is currently receiving treatment.
Patient is good to return to work on Monday, May 13, 2019.
Should not be allowed to lift more than 15 pounds.
Please contact us with any further questions or concerns at 786-596-2000.

Sincerely,

Claudia Paba Prada, MD

Result type:       Patient Letter
Result date:       May 10, 2019 11:36 EDT
Result status:     Modified
Result title:      Work Release Note
Performed by:      Cesar Lujardo, Laura CPR on May 10, 2019 11:36 EDT
Encounter info:    904639483, MCI, Clinic, 05/16/19 -

# EXHIBIT D

Received JAN 29 2020 EEOC Miami District Office

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

Florida Commission on Human Relations and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Prisgar De Suze | (305) 505-2343 | 1/18/1950 |

Street Address ▮▮▮▮▮▮   City, State and ZIP Code
Hollywood, Florida 33020

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (incl. Area Code) |
|---|---|---|
| Marrinson Group, Inc. d/b/a Manor Pines | 50+ | (954) 566-8353 |

Street Address   City, State and ZIP Code
1601 NE 26th Street   Wilton Manors, Florida 33305

| Name | No. Employees, Members | Phone No. (incl. Area Code) |
|---|---|---|
| | | |

Street Address   City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest   Latest
May 17, 2019

☐ CONTINUING ACTION

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)):

In approximately 2011, I began working for Respondent as a Porter-Custodian at Respondent's Rehabilitation Center in Fort Lauderdale, Florida.

During my employment with Respondent, I suffered from Cancer. In or around approximately January 2019, I began experiencing physical symptoms including by way of example, back problems, because of my medical condition. In March 2019, I was absent from work on medical leave for several weeks after I was admitted to the hospital because of my medical condition.

In or around early April 2019, I began undergoing chemotherapy in connection with my medical condition. Similarly, in approximately April 2019, I requested an accommodation for my disability from Respondent because of my medical condition.

In approximately mid-May 2019, I provided Respondent with information from my doctor documenting that I could work with a minor restriction because of my medical condition, but my supervisor, Steven Jones, Respondent's Housekeeping Director, refused to allow me to work and Mr. Jones instead told me to call him again in week. However, when I subsequently called Respondent, Mr. Jones informed me that Respondent had no place for me to work and my employment was terminated.

I believe Respondent failed to accommodate one or more actual or perceived disabilities/handicaps and Respondent subjected me to disparate treatment, discrimination, and retaliation based upon one or more actual or perceived disabilities/handicaps in violation of the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act (FCRA).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 01-28-20   Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# EXHIBIT E

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Prisgar De Suze**

**Hollywood, FL 33020**

From: **Miami District Office**
**Miami Tower, 100 S E 2nd Street**
**Suite 1500**
**Miami, FL 33131**

[ ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2020-02259** | **L. Foreshaw,** **Investigator** | **(786) 648-5840** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Michael J. Farrell,**
**District Director**

5/8/2020

*(Date Mailed)*

cc: **York M. Flik, Esq.**
**ALLEN NORTON & BLUE**
**121 Majorca Ave, Ste. 300**
**Coral Gables, FL 33134**

**Keith Stern. P.A.**
**Keith Stern, Esq.**
**80 SW 8th Street**
**Suite 2000**
**Miami, FL 33130**